## UNITED STATES v. WHITED & WHITED.
### No. 20239.

District Court, D. Washington, W. D.

Nov. 30, 1929.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash.

Ralph LeCocq, of Lynden, Wash., and Van Dyke & Thomas, of Seattle, Wash., for defendant.

BOURQUIN, District Judge.

Plaintiff alleges it stored an auto with defendants which they failed to return on demand; they answer the auto was stolen without negligence on their part, which plaintiff denies.

The action sounds in contract, and the burden of proof is upon defendants to acquit themselves of liability—that is, to prove their failure was not due to lack of ordinary care; to prove they performed their contract to exercise ordinary care.

It appears the auto engaged in smuggling liquor November 26, 1928, was seized by customs officers, and, the operator having fled with the ignition key, defendants towed it into their garage and therein stored. December 4, 1928, the officers making some inquiry were told by defendants the auto had "mysteriously disappeared." The collector testified that Sherman, a son of one of defendants, and some time employed in the garage, stated to the collector that the car was in the garage at 7 p. m. December 1st, but at 3 a. m. December 2d it was gone; that Nichols, another employee, stated the car was not there the morning of December 3d; that Campbell, another employee, stated he did not know for sure whether the doors were open on the morning of December 2d; that Nichols and one of the defendants said it was possible for a car to be taken from storage any evening while the attendant was busy in front, as the side doors were left open; and that the son aforesaid stated that, when he saw the car was gone, he assumed it had been by the collector released. Defendants testify that about November 29, 1928, they went to Seattle and returned the evening of December 30; that during evenings one or two employees are at the garage; that the side doors are closed at 6–7 p. m., the front doors at 10 p. m.; that no employee attends thereafter, but the town marshal is engaged to note the situation along with that of other places, during his nightly watch in the town of about 1,500 people; that they had a $10,000 stock of new cars and accessories, which were covered by insurance; that no previous theft had occurred during some years of the business; that windows were kept locked.

For defendants, Nichols testified that he was employed at the garage from 6:30 a. m. to 8–9 p. m.; that December 1st he was there to 10 p. m. and the car was there then; that

he closed the building, no one else there; that the side doors locked by bars inside, the front doors by padlock outside; that the morning of December 3d, the car was not seen by him, and he "figured" it had been released.

For defendants, Campbell testified he attended the garage from 7 a. m. to 10 p. m. December 2d, about 9:30 a. m. noticing the car gone. The town marshal testified at that time he tried the doors every night. The market value of the auto was $400.

It is believed that defendants are liable for lack of ordinary care either (1) to keep the auto, or (2) to promptly advise the plaintiff of its disappearance to the end that effective pursuit might be invoked, or (3) both. The evidence is not satisfactory that the auto was stolen and without defendants' neglect. At best, the case yet seems one of "mysterious disappearance," as defendants first characterized it. It would seem the son Sherman would likely know more about conditions the night the car disappeared than any other, but defendants did not call him as a witness. He seems to have been about the garage during the night of disappearance. Nichols' testimony, even if taken at face value, is not necessarily contra. Moreover, admissions by one of defendants and Nichols disclose some carelessness in opportunity to secretly remove cars. And defendants knew they were in care of a smuggler's car. Insurance of their own well may have lessened their diligence. The car gone, ordinary care required prompt information to the plaintiff, if not active pursuit by defendants.

Ordinary care would have inspired employees to learn rather than surmise whether a confiscated car had been duly released.

Judgment for plaintiff for $400 and costs.